UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELLY GEIGER, #282354** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0674** |
| **BURL CAIN, WARDEN**<br>**LOUISIANA STATE PENITENTIARY** | **SECTION C** |

## ORDER AND REASONS

Before this Court is a petition for habeas corpus relief by Mr. Kelly Geiger (petitioner), pursuant to 28 U.S.C. § 2254. As grounds for relief, petitioner claims that: (1) there was insufficient evidence at trial to convict him of second degree murder; (2) the indictment was constitutionally defective; (3) his constitutional rights were violated when the prosecutor repeatedly referred to statements of witnesses who never testified at trial; and (4) he was denied effective assistance of both trial and appellate counsel. Upon a thorough review of the record, the memoranda, and the applicable law, the Court has determined that petitioner's petition is meritorious on two of his claims. For the reasons set forth below, this petition is GRANTED with respect to: 1) unconstitutional trial error due to improper remarks by the prosecution, and 2) ineffective assistance of counsel due to failure of the defense to move for a mistrial as a result of those remarks and failure of the defense to request a cautionary jury instruction regarding the credibility of accomplice testimony.

**I. Background and Procedural History**

Petitioner, Mr. Kelly Geiger, is a state prisoner at the Louisiana State Penitentiary in Angola, Louisiana.[1] The following facts are taken from the Louisiana Fourth Circuit's denial of Mr. Geiger's appeal:[2]

> On December 13, 2001, a bill of indictment was filed against Kelly J. Geiger charging him with second degree murder in violation of La. R.S. 14:30.1. He pleaded not guilty at his arraignment on December 18th. After a hearing on March 12, 2002, the trial court denied a motion to suppress the identification. A twelve-person jury found the defendant guilty as charged at a two-day trial on June 25th and 26th. He was sentenced on July 10th to life imprisonment without benefit of parole, probation, or suspension of sentence. His motion for reconsideration of sentence was denied and his motion for an appeal was granted.
>
> At trial, Jason Gross testified that he was in New Orleans in October of 2001 with his brother and sister-in-law, Gerard Gross and Sarah Lenard. About noon on October 9th, eighteen-year-old Jason and his family met the defendant and Lester Panter at Jackson Square in the French Quarter. Those five people and another man, whom Jason knew as Perry or Clifford, began drinking Evan Williams whiskey. They finished one bottle, bought another, and walked to the Moonwalk. They consumed it and bought a third bottle; then they went under the Governor Nicholls Street Wharf. Jason explained that he was going to spend the night under the wharf because his brother, who had gotten arrested, had the keys to the car.
>
> The defendant regularly stayed under the wharf and suggested the group go there. The group then consisted of Jason, Sarah, Perry, Lester, and the defendant. They sat on a high slab of concrete drinking. Sarah and Perry went to sleep, and Lester, Jason, and the defendant walked back into the French Quarter to buy another bottle of whiskey. As they walked through Jackson Square, a woman asked them for a cigarette, and the defendant began talking to her. She walked back to the wharf with them because "she was bored." The group returned to sit on the slab of concrete and drink. After four shots, Jason passed out. He woke up because of his own pain from sleeping on concrete and because of the noise made by the defendant and Lester who were hitting the woman with a stick. The defendant and Lester then threw the woman off the concrete block. She

---

[1] Fed. Rec. Doc. 4, Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody, *Geiger v. Cain*, No. 05-0674.

[2] State Rec., Vol. 1 of 4, Conviction and Sentence Affirmed; Appellate Counsel's Motion to Withdraw Granted, *State v. Geiger*, 2003-KA-0306 (La. Ct. App. 4th Cir. 2003).

landed in the sand at the bottom of the rock, and the defendant and Lester jumped down and began kicking her. The defendant called to Jason to come down and "help us with the body." Jason refused to help, and the defendant said, "Well, if you don't, I'm going to do the same thing to you." Jason jumped down from the rock and grabbed some of the woman's clothes and threw them into the river. He also helped carry the woman to the river. Jason assumed the woman was dead after she fell from the rock because she was not moving. Before they put her in the river, the defendant and Lester crushed her head with large boulders. Jason saw them push the woman's body into the river. He then woke up his sister-in-law and Perry. The defendant suggested that the group leave "because they [had] just killed the girl." As they were crawling through the fence surrounding the wharf area, they got a citation for trespassing. Jason did not report the murder to the police officer because he was in shock. Shortly thereafter, Jason and Sarah left the group. Jason went to sit in the French Quarter, and Sarah found a police officer and reported the murder. Sometime later, an officer came to get Jason at the Drop-in Center in the French Quarter for questioning in connection with the crime. Jason admitted at trial he had lied to the police officer when he said that he did not put any clothing in the river and that he was not present when the woman was hit with the boulder. Jason was arrested and charged with accessory after the fact to murder. He agreed to testify for the State so as not to be charged for his part in the offense.

   Dr. James Traylor, an expert in forensic pathology, testified that he reviewed the autopsy of the woman victim in this case. Dr. Traylor reported the findings of the autopsy: her jaw was fractured on both sides; large scalp lacerations had torn the scalp away from the bone; part of the scalp was missing and brain matter was exposed; and, many of the facial bones were fractured. The cause of death was blunt head trauma caused by being beaten in the head.

   Officer Ryan Maher was on a routine patrol on Decatur Street on October 10th when he was flagged down by Sarah Lenard and Margaret Collins. Sarah Lenard was subpoenaed to testify at trial but did not answer the subpoena. They told him of a crime at the Governor Nicholls Street Wharf. Officer Maher radioed for help, and Officer LaHare arrived and accompanied Maher and the two women to the crime site. The group approached a large concrete block; there was blood on the side of the block and at its base. On top of the boulder there was a small pool of blood. They noticed drag marks from the pool of blood at the base of the boulder leading away. The officer noticed a skullcap with hair intact. A large bloodstained stick was found. Near the pier in a pool of blood some type of brain matter was seen. At the end of the draft trail, the officer found a jacket.

>        Officer Michael Riley joined the investigation at the Governor
> Nicholls Street Wharf. The officer walked underneath the wharf about
> one-half a mile until he found the victim's body in the river lodged
> between a docked barge and the cement footing of the wharf.
>        Officer Michael Carmouche testified that on October 10th he saw
> the defendant and four other people walk out from underneath the
> Governor Nicholls Street Wharf. The defendant and Lester Panter were
> washing off their arms with river water when he noticed them. As the
> group climbed up the levee, the officer identified himself. He told them
> they were violating a trespass ordinance. The officer issued a summons to
> each person; he also asked for identification from each. He found their
> names were Kelly Geiger, Sarah Lenard, Lester Panter, Jason Gross, and
> Clifford Gaines. He did not see blood on any of the five. Later that day
> Officer Ryan Maher called him and asked him to come back to that area;
> he identified Sarah Lenard as one of the people he had see leaving that
> morning. The officer was later shown a photo lineup from which he
> selected a picture of the defendant and named him as one of the men
> exiting the wharf at Governor Nicholls Street. . .
>        A review of the transcript reveals that the State proved the offense
> beyond a reasonable doubt. The sentence is legal in all respects. Our
> independent review reveals no non-frivolous issue and no trial court
> ruling, which arguably supports the appeal.

The direct appeal was denied on July 2, 2003 by the Fourth Circuit.[3] Petitioner did not apply for a supervisory writ to the Louisiana Supreme Court.

On November 25, 2003, petitioner filed a Motion for Post Conviction Relief in the Orleans Criminal District Court.[4] This motion was denied by the District Court on December 16, 2003.[5] Petitioner filed for supervisory writ with the Louisiana Fourth Circuit Court of Appeal, which denied the writ on February 6, 2004.[6]

---

[3] State Rec., Vol. 1 of 4, Conviction and Sentence Affirmed; Appellate Counsel's Motion to Withdraw Granted, *State v. Geiger*, 2003-KA-0306 (La. Ct. App. 4th Cir. 2003).
[4] State Rec., Vol. 1 of 4, Application for Post Conviction Relief, Petition for Writ of Habeas Corpus, Request for Out of Time Appeal, November 25, 2003.
[5] State Rec., Vol. 1 of 4, Judgment, December 16, 2003.
[6] State Rec., Vol. 1 of 4, Application for Supervisory Writ Denied, February 6, 2004.

Petitioner subsequently applied for supervisory writ to the Louisiana Supreme Court, which denied his application on January 14, 2005.[7]

Petitioner filed this federal application for habeas corpus on February 14, 2005.[8]

## II. Jurisdiction

Jurisdiction is proper under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the petitioner is "in custody" under the conviction he is attacking.[9] Petitioner Geiger is confined at the Louisiana State Penitentiary in Angola, therefore jurisdiction is proper.

## III. Venue

Venue is proper under AEDPA in the district where the inmate is in custody or where the state court conviction and sentence were obtained.[10] Petitioner Geiger was convicted and sentenced in Orleans Parish, therefore venue in the Eastern District of Louisiana is proper.

## IV. Timeliness

The state concedes that petitioner's application appears to be timely. After reviewing the record, the Court agrees that petitioner's application was timely filed. Generally speaking, AEDPA requires that a petitioner bring his Section 2254 claims within one year of the date on which his conviction became final.[11] Pursuant to 28

---

[7] State Rec., Vol. 1 of 4, Application for Supervisory Writ Denied, January 14, 2005.
[8] Fed. Rec. Doc. 4, Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By a Person in State Custody, *Geiger v. Cain*, No. 05-0674.
[9] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).
[10] 28 U.S.C. § 2241(d).
[11] 28 U.S.C. § 2244(d).

U.S.C. § 2244(d)(1)(A), petitioner's one year limitation period for seeking federal habeas corpus relief commenced running on the date on which that judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." Because petitioner's direct appeal was denied by the Louisiana Fourth Circuit Court of Appeal on July 2, 2003 and he did not appeal to the Louisiana Supreme Court, his conviction became final on August 1, 2003, thirty days after the Fourth Circuit denied the application for supervisory writ on July 2, 2003.

On this date, the one-year statute of limitations for filing a federal habeas corpus petition began to run.[12] However, the AEDPA's one-year statute of limitations is tolled for the period during which a properly filed application for post state conviction relief or other collateral review attacking a conviction or sentence is pending in state court.[13] 116 days lapsed from August 1, 2003 until November 25, 2003, when petitioner filed his motion for post conviction relief. From November 25, 2003 until January 14, 2005, the statute of limitations was tolled for a period of 416 days while Mr. Geiger's application for state post-conviction relief was pending in state court. Between January 14, 2005 and February 14, 2005, when petitioner filed his habeas petition, 31 days had lapsed. Allowing for tolling for the time during which Mr. Geiger's state applications were pending, the total number of days lapsed was 147, which is within the statute of limitations.

For the reasons stated above, the Court finds that Mr. Geiger's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is timely.

---

[12] See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); also see *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).
[13] See *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2).

6

**V.     Exhaustion**

Petitioner has exhausted state remedies as required by AEDPA. Under AEDPA, a petitioner must exhaust his remedies in state court before seeking habeas relief from the federal courts.[14] "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[15] Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal habeas petition were previously presented to a state's highest court in a procedurally proper manner according to state court rules.[16]

Petitioner presents five claims for review in his federal habeas petition as listed above. Each claim was raised in his Application for Writs of Certiorari and Review to the Louisiana Supreme Court.[17] Accordingly, petitioner has satisfied AEDPA's exhaustion requirement. Therefore, the Court will address the claims on the merits.

**VI.    Standard of Review**

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law.[18] Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of

---

[14] § 2254(b)(1)(A).
[15] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001), internal quotation marks omitted.
[16] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).
[17] State Rec., Vol. 4 of 4, Application for Writs of Certiorari and Review, February 18, 2004.
[18] 28 U.S.C. § 2254(d):
   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

fact are reviewed under § 2254(d)(2).[19]  As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[20]  The United States Supreme Court has noted the following:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams v. Taylor*, 529 U.S. 362 (2002) that an unreasonable application is different from an incorrect one.[21]

As to questions of fact, factual findings are presumed to be correct, and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[22]

---

[19] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).
[20] 28 U.S.C. § 2254(d)(1).
[21] *Bell v. Cone*, 535 U.S. 685, 694 (2002), internal citations omitted.
[22] 28 U.S.C. § 2254(d)(2); see also *Hill v. Johnson*, 210 F.3d 481, 485; 28 U.S.C. § 2254(e)(1).

**VII.    Law & Analysis**

(1) Petitioner argues that his constitutional rights were violated when the prosecutor repeatedly referred to statements of a witness who never testified at trial, and thus, statements that were not in evidence.[23]

> Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Id.*; *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Generally, a claim of prosecutorial misconduct presents a mixed question of law and fact. See *United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir.1989), cert. denied, 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).[24]

The Fifth Circuit has held that prosecutorial misconduct can render a trial fundamentally unfair "only if the prosecutor's remarks evince 'either persistent and pronounced misconduct or… the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.'" [25]

Here, the petitioner argues that during voir dire, opening and closing statements, the prosecuting attorney stated that there was another witness to the incident, Sarah Lenard, whose testimony would be favorable to the state. In reality, only one witness, Jason Gross, who was an accomplice, testified. The petitioner argues that his right to a

---

[23] Fed. Rec. Doc. 4, Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody at 7-13, *Geiger v. Cain*, No. 05-0674.
[24] *Whaley v. Thompson*  22 F.Supp.2d 1146, 1162 (D.Or.,1998).
[25] *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (C.A.5 (La.) 1985), quoting *Fulford v. Maggio*, 692 F.2d 354, 359 (5th Cir.1982), reversed on other grounds, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); see also *Houston v. Estelle*, 569 F.2d 372, C.A.5 (Tex.) 1978.

fair trial was impaired as a result of the three instances in which the prosecuting attorney made improper comments:

> 1) During voir dire, the following statements were made:
>
> Prosecutor: I do want to talk to you about lay witnesses. Jason Gross is the State's only eyewitness that we have access to. He's about –
>
> Defense: I'm going to object. I think we're getting a little bit into the facts of the case more than is proper in voir dire.
>
> Court: Ah, as to that one comment, I would overrule the objection, note the objection for the Defense.[26]
>
> 2) During opening, the following statements were made:
>
> Prosecutor: Let me tell you what you're going to hear. You're going to hear that on October 9th around 12:00 p.m., someone named Jason Gross, whom you will hear from, and someone named Sarah Lenard, whom you will not hear from because I can't get my hands on her --
>
> Defense: Objection, your honor. This is completely --
>
> Court: I couldn't hear what you said. Please, ma'am, I apologize. Because I could not what?
>
> Prosecutor: Cause I can't get my hands on her. Cause I can't produce her. It's a fact.
>
> Court: You're – you're intending to present evidence that you cannot reach her?
>
> Prosecutor: Oh, yes.
>
> Court: Then I would overrule that as to what the lady intends to offer.
>
> Defense: Based on the fact --
>
> Court: I'm not saying that's correct or not.[27]
>
> 3) During closing arguments, the following exchange took place:
>
> Prosecutor: Do I wish I had Sarah Lenard to corroborate Jason Gross' account of what happened? You better believe I do. Did I take the necessary actions against her? You better believe I have.
>
> Defense: I'm going to object to this. Arguing –
>
> Court: Yeah, I would sustain that on the – on the representation that she would corroborate. I'm not here to say that she would or wouldn't.[28]

---

[26] State Rec., Vol. 3 of 4, Trial Transcript at 14, *State v. Geiger*, No. 426-819 (June 25-26, 2002).
[27] State Rec., Vol. 3 of 4, Trial Transcript at 18-19, *State v. Geiger*, No. 426-819 (June 25-26, 2002).

10

This claim was raised for the first time in petitioner's application for post-conviction relief.[29] The district court denied relief without comment.[30] Petitioner applied for supervisory writs with the Louisiana Fourth Circuit Court of Appeal, and was denied February 6, 2004.[31] Petitioner applied for supervisory writs to the Louisiana Supreme Court, which denied his application on January 14, 2005.[32]

In a federal habeas corpus proceeding, the Court must review allegedly improper prosecutorial arguments under a strict standard.[33] The first inquiry is whether the prosecutor's comments were indeed improper; the second is to evaluate whether the comments were harmful.[34] The prosecution has an obligation to avoid "improper suggestions, insinuations, and… assertions of personal knowledge" which might induce a jury to trust the state's judgment over its own judgment after viewing the evidence."[35] "Such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant, thus jeopardizing the defendant's right to be tried solely on the basis of the evidence presented to the jury."[36]

---

[28] State Rec., Vol. 3 of 4, Trial Transcript at 181, *State v. Geiger*, No. 426-819 (June 25-26, 2002).
[29] State Rec., Vol. 1 of 4, Application for Post Conviction Relief, Petition for Writ of Habeas Corpus, Request for Out of Time Appeal, November 25, 2003
[30] State Rec., Vol. 1 of 4, Judgment, December 16, 2003.
[31] State Rec., Vol. 1 of 4, Application for Supervisory Writ Denied, February 6, 2004, holding: "Relator's claims in his application for post-conviction relief have been reviewed. Relator has failed to demonstrate that he is entitled to relief. There is no error in the District Court's December 16, 2003 denial of relator's application for post-conviction relief."
[32] State Rec., Vol. 1 of 4, Application for Supervisory Writ Denied, January 14, 2005.
[33] *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000).
[34] See *United States v. Parker*, 877 F.2d 327, 332 (5th Cir.), cert. denied, 493 U.S. 871 (1989).
[35] *Berger v. Unites States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), overruled on other grounds by *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); see also *United States v. Young*, 470 U.S. 1, 18-19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).
[36] *Rollins v. Horn* L 1806504, 14 -15 (E.D.Pa. 2005), citing *United States v. Young*, 470 U.S. 1, 18, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

> Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, as *Lawn* teaches, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly.[37]

Mr. Geiger has shown, and a review of the record reveals, that the prosecution's remarks were improper and of such prejudicial character that his trial was rendered fundamentally unfair.[38] The prosecution suggested that another witness, the sister-in-law of Jason Gross — the only material witness who could place the defendant at the scene of the crime — would have been able to corroborate his testimony. The prosecution conveyed the impression that evidence which was not presented to the jury — the corroborating testimony of Sarah Lenard — supported the charges against Mr. Geiger. The prosecution's remarks about Sarah Lenard jeopardized Mr. Geiger's right to be tried solely on the evidence presented at trial. The Court must determine whether these remarks, when examined in the entire context of the trial, amounted to prejudicial error. The Court finds that they did.

A thorough review of the record shows that Jason Gross was the only testifying witness who could place the defendant at the scene of the crime.[39] He was 18 years old at the time of the trial, and admitted that the group drank at least four bottles of whiskey together the day of the crime. He admitted to participating in moving the body. He admitted to destroying evidence by throwing some of the victim's clothing in the river.

---

[37] *U.S. v. Young*, 470 U.S. 1, 11-13, 105 S.Ct. 1038,1044 - 1045 (U.S.Okl. 1985).
[38] See *Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974).
[39] State Rec., Vol. 3 of 4, Trial Transcript p.102-53, *State v. Geiger*, No. 426-819 (June 25-26, 2002).

He admitted to lying to the police on numerous occasions. He admitted to not reporting the crime to the police. He admitted he was scared of the police, of Geiger and Lester, of being charged with murder, of being charged as an accessory after the fact. He admitted to making a deal with the prosecution to testify in order to be allowed to go free.

To bolster Gross's testimony, the prosecution represented on three occasions that another witness would have testified against Geiger as well, but for the state's inability to locate her. These suggestions, objected to and overruled (with the exception of the final comment, during rebuttal closing, which objection was sustained), must be taken in the context of the entire trial. The prosecution's improper representations that Sarah Lenard's testimony would have corroborated the only state witness who could place the defendant at the scene of the crime, when taken in the context of the trial, were sufficient to poison the well of evidence to be offered to the jury, and to undermine the jury's ability to judge the evidence fairly. The Court finds that this error, standing on its own, provides sufficient reason to grant the relief petitioner seeks.

(2) Mr. Geiger argues he was denied his constitutionally guaranteed right to effective assistance of trial counsel when counsel failed to move for a mistrial and failed to request an instruction on accomplice testimony.

A claim of ineffective assistance of counsel is a mixed question of law and fact.[40] Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[41]

---

[40] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), cert. denied, 538 U.S. 969, 123 S.Ct. 1768 (2003).
[41] 28 U.S.C. § 2254(d)(1).

13

In *Strickland*,[42] the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.[43] To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.[44] "Counsel's performance is deficient if it falls below an objective standard of reasonableness."[45] Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.[46] "[I]t is necessary to 'judge... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[47] Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.[48]

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[49] In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."[50] Courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[51]

---

[42] *Strickland v. Washington*, 466 U.S. 668 (1984).
[43] See *Strickland v. Washington*, 466 U.S. 668, 697 (1984).
[44] See *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), cert. denied, 534 U.S. 1163 (2002).
[45] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).
[46] See *Strickland v. Washington*, 466 U.S. 668, 689 (1984).
[47] *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).
[48] See *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).
[49] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[50] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[51] *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).

Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[52] If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.[53]

Petitioner argues that his counsel was ineffective for failing to move for a mistrial when the prosecutor made improper comments.[54] This Court finds that counsel's failure to move for a mistrial when the prosecutor referred to her inability to present Sarah Lenard as a corroborating witness constituted deficient performance, which unduly prejudiced the petitioner. The prosecution's improper comments, as discussed above, poisoned the well of evidence offered to the jury and undermined the jury's ability to judge the evidence fairly.

Petitioner also argues that his counsel was ineffective for failing to request a cautionary jury instruction with regard to the credibility of accomplice testimony, "even though the only evidence the state had against Mr. Geiger was the testimony of an admitted accomplice."[55] This Court finds that defense counsel's failure to request a cautionary jury instruction on accomplice testimony constitutes deficient performance, which unduly prejudiced the petitioner.

The state argues that Jason Gross was not charged as an accomplice in the murder and did not admit to having a role in the killing of the victim. Rather, the state claims, he

---

[52] *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); see also *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).
[53] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).
[54] Fed. Rec. Doc. 4, Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody at 15-17, *Geiger v. Cain*, No. 05-0674.
[55] Fed. Rec. Doc. 4, Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus By Person in State Custody at 15, *Geiger v. Cain*, No. 05-0674.

was a witness to the murder and helped dispose of the body after the woman was killed, and so was not an accomplice. The Court disagrees.

Under Louisiana law, an accomplice is strictly defined as one who is associated with others in commission of a crime.[56] At a minimum, and by admission during his testimony, Jason Gross was present at the scene during the crime, assisted in moving the body, and destroyed evidence by throwing some articles of the victim's clothing in the river. As such, his activities constitute association in the commission of this crime, and Gross meets the state's strict definition of an accomplice.

In Louisiana, while a jury may convict on an accomplice's uncorroborated testimony,[57] "[g]reat caution instructions are required when a case involved uncorroborated accomplice testimony."[58] The cautionary instruction is not mandatory when the accomplice testimony is materially corroborated, meaning "there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation."[59]

Here, the state concedes that no cautionary jury instruction was given regarding the credibility of accomplice testimony.[60] However, the state argues that petitioner has not shown deficient performance or prejudice, as required by *Strickland*. In addition, the state argues that Jason Gross's testimony was corroborated by several witnesses. The Court

---

[56] *State v. David*, Sup.1954, 226 La. 268, 76 So.2d 1. See also La. R.S. 14:23, "The parties to crimes are classified as: (1) Principals; and (2) Accessories after the fact." See also La. R.S. 14:24, "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
[57] *State v. Callier*, 909 S0.2e 23 (La. Ct. App. 2d Cir. 2005).
[58] *State v. Chesson*, 856 So.2d 166 (La. Ct. App. 3d Cir. 2003). See also *State v. Rabun*, 880 So.2d 184 (La. Ct. App. 2d Cir. 2004), stating a jury should be instructed to treat uncorroborated accomplice testimony with great caution.
[59] *State v. Chesson*, 856 So.2d 166 (La. Ct. App. 3d Cir. 2003).
[60] Fed. Rec. Doc. 31, Response to Order and Supplemental Response to Habeas Corpus Petition, p.2. 4.

disagrees, finding deficient performance and prejudice as a result of the failure to request cautionary jury instruction for the materially uncorroborated testimony of an accomplice. While a reviewing court must be highly deferential of counsel's performance, and must be careful to eliminate the distorting effects of hindsight,[61] failing to request an accomplice jury instruction where required by Louisiana law does not constitute reasonably effective assistance, considering the circumstances. Jason Gross's testimony was not materially corroborated.[62] While material points in Gross's testimony were confirmed, namely the fact of the killing, the cause of death, the location of the body, drag marks, and bloody stick, no material corroboration of the identity of the petitioner and his relationship to the situation was offered at trial. Jason Gross was the only witness who could identify the petitioner and place him at the scene of the crime. No other testimony corroborated Gross's testimony as to the petitioner. The testimony of one officer, that petitioner was cited for criminal trespass near the scene of the crime, is not material corroboration sufficient to preclude the requirement of a jury instruction urging that Gross's testimony be weighed with great caution. Petitioner was prejudiced by the lack of this instruction. But for this unprofessional error, there is a reasonable probability that the outcome would have been different.

The *Strickland* Court also stated that a verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[63] The verdict in this case was based on the testimony of one eyewitness, who was an accomplice, and who was the only person who could place the defendant at the

---

[61] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).
[62] See *State v. Chesson*, 856 So.2d 166 (La. Ct. App. 3d Cir. 2003); *State v. Rabun*, 880 So.2d 184 (La. Ct. App. 2d Cir. 2004); *State v. McCullough*, 774 So.2d 1105 (La. Ct. App. 3d Cir. 2000); all requiring corroboration of material points in the accomplice testimony as well as confirmation of the defendant's identity and some relationship to the scene.
[63] *Strickland v. Washington*, 466 U.S. 668, 696 (1984).

17

scene of the crime; the prosecution made improper comments that another witness existed who could corroborate this testimony; the defense failed to move for a mistrial at these remarks; and the defense failed to request a required cautionary jury instruction on the credibility of uncorroborated accomplice testimony.

The Court concludes that petitioner has met his burden of showing that errors on the part of counsel and the prosecution independently provide sufficient support to grant him the requested relief. The Court further concludes that there is more than a reasonable likelihood that, absent the alleged errors, the jury would have reached a different decision as to petitioner's guilt, and that the jury's decision was fundamentally unfair, given the weakness of the state's case against Geiger, based exclusively as it was, on Jason Gross's uncorroborated testimony.

Petitioner demonstrated that his petition is meritorious on two of his claims such that the requested relief should be granted, and, therefore the Court pretermits review of his remaining claims.[64] The prosecutor made improper comments that rendered petitioner's trial fundamentally unfair, constituting error sufficient to grant the requested relief. In addition, counsel performed deficiently for failing to move for a mistrial after the prosecution's improper comments, and for failing to request a jury instruction on the credibility of accomplice testimony. Petitioner was prejudiced by these errors. Counsel's ineffective assistance alone constitutes error sufficient to grant the requested relief.

---

[64] Although declining to exhaustively review petitioner's other claims, the Court notes that "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391 (U.S.Tex. 1983). Further, the United States Supreme Court set the standard for reviewing sufficiency of evidence claims: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt*.*" *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Out of an abundance of caution, the Court finds no merit in petitioner's insufficient evidence claim.

In conclusion, the Court finds that failing to grant this petition for habeas corpus would result in a fundamental miscarriage of justice.

## VIII.   Conclusion

For the above reasons, **IT IS ORDERED** that KELLY GEIGER'S petition be **GRANTED**.  It is **FURTHER ORDERED** that the state either retry KELLY GEIGER within 120 days of this order or dismiss the charges.  The state shall notify the defense and the Court of its intention within 30 days of this ruling.

New Orleans, Louisiana this 28th day of November, 2006.

_____
HELEN G. BERRIGAN
U.S DISTRICT JUDGE